# IN THE SUPREME COURT OF CALIFORNIA

DANIEL ESCAMILLA,

Plaintiff and Appellant,

v.

JOHN VANNUCCI,

Defendant and Respondent.

S282866

First Appellate District, Division One
A166176

Alameda County Superior Court
RG21111193

---

March 20, 2025

---

Justice Corrigan authored the opinion of the Court, in which Justice Guerrero and Justices Liu, Kruger, Groban, Jenkins, and Evans concurred.

---

ESCAMILLA v. VANNUCCI

S282866

Opinion of the Court by Corrigan, J.

Code of Civil Procedure section 335.1[1] sets out a two-year statute of limitations for a variety of tort suits, including malicious prosecution. However, section 340.6 provides a one-year limitations period for certain suits brought against attorneys. Here, we decide which is the appropriate statute of limitations for a malicious prosecution action against an attorney. Based on the statutory text, purpose, and legislative history, we hold that section 340.6 does not apply to claims against attorneys brought by parties who were never their clients or the intended beneficiaries of their clients. Because the malicious prosecution claims here are brought by formerly *adverse* parties and not by an attorney's own clients, they are not subject to the one-year limitations period in section 340.6.

## I. BACKGROUND

Plaintiff Daniel Escamilla is a certified fugitive recovery agent. In September 2012, he searched the home of Lan Ting Wu and Andy Yu Feng Yang looking for Yang's brother, who was wanted on felony drug trafficking charges. Yang, Wu, and their minor son later sued Escamilla, asserting claims for assault, battery, trespass, and false imprisonment, as well as negligent and intentional infliction of emotional distress. Defendant John

---

[1]    All statutory references are to the Code of Civil Procedure unless otherwise noted.

Fitzpatrick Vannucci was their lawyer. Escamilla defended the search as supported by probable cause and cross-complained against Yang for abuse of process. When the case was tried in August 2019, a jury found for Escamilla on all plaintiffs' claims and awarded him $20,000 in damages on the cross-complaint. Judgment was entered on September 13, 2019.

Just under two years later, on August 30, 2021, Escamilla filed a malicious prosecution action against Yang, Wu, and Vannucci.[2] He claimed the prior lawsuit was unsupported by probable cause and that attorney Vannucci knew or should have known that the factual and legal representations advanced there were materially false.

Vannucci moved to strike Escamilla's complaint against him as a strategic lawsuit against public participation (SLAPP). (See § 425.16.) He asserted the malicious prosecution claim arose from protected activity and Escamilla could not establish a probability of prevailing, as required by the anti-SLAPP statute (*id*., subd. (b)(1)),[3] because the suit was barred by the one-year statute of limitations applicable to claims against attorneys (§ 340.6). In response, Escamilla argued the suit was indeed timely because the two-year statute of limitations for tort claims (§ 335.1) applied. The trial court agreed with Vannucci that section 340.6 governed and the malicious prosecution claim

---

[2] An additional claim for fraud against Yang and Wu is not at issue here.

[3] In order to avoid dismissal under the anti-SLAPP statute, a plaintiff whose claims arise from "protected activity in which the defendant has engaged," must demonstrate that these claims "have at least 'minimal merit.'" (*Park v. Board of Trustees of California State University* (2017) 2 Cal.5th 1057, 1061; see § 425.16, subd. (b).)

was time-barred. It granted the motion to strike as to defendant Vannucci only. The Court of Appeal affirmed. (*Escamilla v. Vannucci* (2023) 97 Cal.App.5th 175 (*Escamilla*).)[4]

Several Court of Appeal cases have held that section 340.6's one-year statute of limitations applies to malicious prosecution claims against attorneys. (See *Garcia v. Rosenberg* (2019) 42 Cal.App.5th 1050; *Connelly v. Bornstein* (2019) 33 Cal.App.5th 783 (*Connelly*); *Yee v. Cheung* (2013) 220 Cal.App.4th 184 (*Yee*); *Vafi v. McCloskey* (2011) 193 Cal.App.4th 874 (*Vafi*).) One published decision reached a contrary conclusion. (See *Roger Cleveland Golf Co., Inc. v. Krane & Smith, APC* (2014) 225 Cal.App.4th 660 (*Roger Cleveland*), disapproved on other grounds in *Lee v. Hanley* (2015) 61 Cal.4th 1225, 1239 (*Lee*).) We granted review to resolve the conflict.

## II. DISCUSSION

The parties agree Escamilla's malicious prosecution claim arises from protected activity. (See *Jarrow Formulas, Inc. v. LaMarche* (2003) 31 Cal.4th 728, 734–735, 741.) The only issue here is whether Escamilla can establish a probability that he will prevail on the malicious prosecution claim. (See § 425.16, subd. (b)(1).) If the one-year statute of limitations applies, he will not be able to do so. "This [is] a pure question of statutory interpretation, subject to independent review." (*Lopez v. Sony*

---

[4] In addition to concluding the action against Vannucci was untimely under section 340.6, the Court of Appeal rejected an argument that the limitations period was tolled by Vannucci's continuous representation of his clients. (*Escamilla, supra,* 97 Cal.App.5th at pp. 190–191; see § 340.6, subd. (a)(2).) This aspect of the decision is not before us, and we express no opinion on it.

*Electronics, Inc.* (2018) 5 Cal.5th 627, 633 (*Lopez*); see *Lee*, *supra*, 61 Cal.4th at p. 1232.)

A. *Malicious Prosecution*

Malicious prosecution is an intentional tort. It offers a remedy to one subjected to a criminal charge or civil action that has been maliciously instituted or maintained. (*Parrish v. Latham & Watkins* (2017) 3 Cal.5th 767, 775 (*Parrish*).) To prevail, the plaintiff must show that a prior action was: commenced by or at the direction of the defendant; initiated or maintained both without probable cause and with malice; and pursued to a legal termination favorable to the plaintiff. (*Id.* at pp. 775–776; *Soukup v. Law Offices of Herbert Hafif* (2006) 39 Cal.4th 260, 292.) A malicious prosecution claim may lie against the attorney who prosecuted the prior action as well as the adverse party. (See, e.g., *Zamos v. Stroud* (2004) 32 Cal.4th 958, 970 (*Zamos*).)

"California has never prescribed by statute a specific period of limitation for malicious prosecution." (*Stavropoulos v. Superior Court* (2006) 141 Cal.App.4th 190, 193 (*Stavropoulos*).) However, courts have held that malicious prosecution claims fall within the catchall language of section 335.1, which was first enacted in 2002 (Stats. 2002, ch. 448, § 2, p. 2521) and provides a two-year statute of limitations for claims of "assault, battery, or injury to, or for the death of, an individual caused by the wrongful act or neglect of another." (§ 335.1; see *Stavropoulos*, at p. 197; see also *Silas v. Arden* (2012) 213 Cal.App.4th 75, 87–88.) While it is generally agreed that section 335.1's two-year limitations period applies to malicious prosecution claims against an adverse party (see, e.g., *Area 55, LLC v. Nicholas & Tomasevic, LLP* (2021) 61 Cal.App.5th 136, 173, fn. 29), the

question has arisen whether section 340.6 is the more appropriate statute of limitations when a malicious prosecution claim is brought against the adverse party's *attorney*.

B.  *Section 340.6*

1.  *Statutory Text*

Section 340.6 states, in relevant part:  "An action against an attorney for a wrongful act or omission, other than for actual fraud, arising in the performance of professional services shall be commenced within one year after the plaintiff discovers, or through the use of reasonable diligence should have discovered, the facts constituting the wrongful act or omission, or four years from the date of the wrongful act or omission, whichever occurs first."  (§ 340.6, subd. (a).)  Except in situations not applicable here, the statute provides for tolling when:  "[t]he plaintiff has not sustained actual injury"; "[t]he attorney continues to represent the plaintiff regarding the specific subject matter in which the alleged wrongful act or omission occurred"; "[t]he attorney willfully conceals the facts constituting the wrongful act or omission"; or "[t]he plaintiff is under a legal or physical disability that restricts the plaintiff's ability to commence legal action."  (*Id*., subd. (a)(1)–(4).)  A recently added provision also permits tolling when "[a] dispute between the lawyer and client concerning fees, costs, or both is pending resolution."  (*Id*., subd. (a)(5).)

No one questions that former clients can sue their attorneys for malpractice and that section 340.6 applies to such a lawsuit.  There is also no dispute that attorneys may be sued for malicious prosecution.  The question here is which statute of limitations applies when an attorney is sued for malicious prosecution based on the attorney's representation of a client in

the underlying litigation? To support the conclusion that section 340.6 extends to such suits by nonclients, some courts have pointed out that the statute's language refers to claims brought by a " 'plaintiff' " rather than by a " 'client.' " (*Yee*, *supra*, 220 Cal.App.4th at p. 195; see *Vafi*, *supra*, 193 Cal.App.4th at p. 882.) Thus, they conclude, claims against an attorney brought by *anyone* must be initiated within one year, so long as the claim concerns an attorney's professional conduct.

The first cases to express this view, *Vafi* and *Yee*, involved malicious prosecution actions against former litigation adversaries and the lawyers who had represented them. Both cases relied on the language of section 340.6 to conclude its shorter limitations period applies to malicious prosecution suits against attorneys. (*Yee*, *supra*, 220 Cal.App.4th at pp. 194–195; *Vafi*, *supra*, 193 Cal.App.4th at p. 881.) *Yee* reasoned: "The words of the statute are quite broad, but they are not ambiguous: *any time* a plaintiff brings an action against an attorney and alleges that attorney engaged in a wrongful act or omission, other than fraud, in the attorney's performance of his or her legal services, that action must be commenced within a year after the plaintiff discovers, or should have discovered, the facts that comprise the wrongful act or omission." (*Yee*, at p. 195, italics added.) Because the Legislature specified only claims of fraud, *Vafi* read section 340.6's language strictly and declined to recognize exceptions for any other claims, including malicious prosecution. (See *Vafi*, at p. 881.)[5] *Roger Cleveland*

---

[5] *Vafi* and *Yee* also reached beyond the statutory text to support their construction. Invoking the interpretive maxim that a specific provision prevails over a more general one when statutes conflict, both concluded the attorney-specific rule of section 340.6 was entitled to precedence. (*Yee, supra,* 220

disagreed with this interpretation. Instead, that court "read the language in section 340.6 as a professional negligence statute, similar to section 340.5, the statute of limitations applicable to a claim for professional negligence of a health care provider." (*Roger Cleveland*, *supra*, 225 Cal.App.4th at p. 677.) It concluded section 340.6's text is most reasonably understood to include claims by clients against their current or former attorneys but *not* claims by third parties alleging an attorney maliciously prosecuted an action against them. (*Roger Cleveland*, at p. 680.)[6]

We addressed the scope of section 340.6 nearly 10 years ago in *Lee*, *supra*, 61 Cal.4th 1225. That case did not involve claims by a stranger to the attorney-client relationship, but rather a client's claims against her former attorney for failing to return the unearned portion of his retainer after the representation ended. (See *id.* at p. 1230.) *Lee* thus had no occasion to address whether section 340.6 applies to claims by nonclients. The question there was whether the statute encompasses only "legal malpractice claims or covers a broader range of wrongful acts or omissions that might arise during the attorney-client relationship." (*Lee*, at p. 1233.) In answering that question, *Lee* interpreted the statutory phrase "arising in

Cal.App.4th at p. 195; *Vafi*, *supra*, 193 Cal.App.4th at p. 880.) However, the interpretive maxim comes into play only if the statutes *conflict*. (See *Lopez*, *supra*, 5 Cal.5th at p. 634.) Because we conclude section 340.6 is limited to claims by an attorney's clients, there is no conflict with section 335.1.

[6] One published decision followed this holding, but the opinion was superseded by our grant of review. (See *Parrish*, *supra*, 3 Cal.5th at p. 775.) We ultimately decided that appeal on a different ground and did not reach the statute of limitations issue. (*Ibid.*)

the performance of professional services" to encompass other kinds of attorney wrongdoing besides legal malpractice. (§ 340.6, subd. (a); see *Lee*, at pp. 1236–1237.)[7] But while *Lee* declined to cabin section 340.6 to malpractice claims alone, we did not address whether the statute applies to claims alleging misconduct toward persons *outside* the attorney-client relationship. We clarified that the phrase embraces only those "claims whose merits necessarily depend on proof that an attorney violated a professional obligation in the course of providing professional services." (*Lee*, at pp. 1236–1237.) We also rejected an interpretation that would have applied section 340.6 "to *all* forms of attorney misconduct, except actual fraud, that occur during an attorney-client relationship." (*Lee*, at p. 1238, italics added; see *post*, at pp. 15–16.) Countering the argument that additional exceptions may not be implied when a statute includes an express exception (see *Sierra Club v. State Bd. of Forestry* (1994) 7 Cal.4th 1215, 1230; see also *Vafi*, *supra*, 193 Cal.App.4th at p. 881), *Lee* explained that its interpretation did not create a new exception to the statute but merely clarified the meaning of the language defining its scope. (*Lee*, at p. 1239.)

---

[7] *Lee* noted that statements in *Roger Cleveland* "reading section 340.6(a) 'as a professional negligence statute' " were "in tension" with our interpretation and disapproved *Roger Cleveland* to the extent that case was inconsistent. (*Lee*, *supra*, 61 Cal.4th at p. 1239.) "In particular, *Lee* criticized *Roger Cleveland*'s premise that section 340.6(a) should be understood ' "as a professional negligence statute" ' [citation] — without analyzing *Roger Cleveland*'s ultimate conclusion that section 340.6(a) is inapplicable to claims filed against a former litigation adversary's attorney." (*Parrish*, *supra*, 3 Cal.5th at p. 775.)

As its facts and analysis demonstrate, *Lee* did not address the question here. Lee did not challenge the quality of legal services that attorney Hanley had performed for her, but instead asserted liability based on the attorney's failure to return unexpended funds advanced to him. The relevant question in *Lee* was whether section 340.6 applied, even though there was no allegation of malpractice, because Hanley's conduct violated his uniquely professional duty as a lawyer, as opposed to a duty owed by the general public. This case is different. The limitations question here does not turn on any duty owed to a client. It turns on which statute appropriately applies to a *third party's* claims against a lawyer who provided professional services for a client.

*Lee* found the text of section 340.6 unclear as to whether its scope was limited to legal malpractice claims or extended to "a broader range of wrongful acts or omissions that might arise during the attorney-client relationship." (*Lee*, *supra*, 61 Cal.4th at p. 1233.) We conclude the text is similarly ambiguous as to whether the statute applies to claims brought against attorneys by third parties.

As *Vafi* and *Yee* pointed out, section 340.6 uses the word "plaintiff" in several places. It defines accrual based on when "the plaintiff discovers" facts giving rise to the claim. (§ 340.6, subd. (a).) It permits tolling when "[t]he *plaintiff* has not sustained actual injury" or is "under a legal or physical disability" (*id*., subd. (a)(1) & (a)(4), italics added) and when an "attorney continues to represent the *plaintiff*" (*id*., subd. (a)(2), italics added). The significance of this phrasing should not be overread, however. The statute's discovery-based accrual rule reflects our holding in *Neel v. Magana, Olney, Levy, Cathcart & Gelfand* (1971) 6 Cal.3d 176, 179 (*Neel*), that "the statute of

limitations for legal malpractice, as for all professional malpractice, should be tolled until the client discovers, or should discover, his cause of action." (See also *Roger Cleveland*, *supra*, 225 Cal.App.4th at pp. 679–680.) Similarly, the rule tolling the statute until the plaintiff has sustained "actual injury" (§ 340.6, subd. (a)(1)) derives from our related holding in *Budd v. Nixen* (1971) 6 Cal.3d 195, 198 (*Budd*), that "a cause of action for legal malpractice does not accrue until the client suffers damage." (See also *Roger Cleveland*, at p. 679.) Although section 340.6 uses the broader term "plaintiff" for these provisions, the discovery-based accrual and actual injury requirements are thus directed to concerns that arise when clients sue their own attorneys. The same concerns are reflected in subdivision (a)(3), which provides for tolling when an attorney "willfully conceals the facts constituting the wrongful act or omission." Willful concealment is a matter of special concern within the attorney-client relationship. (See *Neel*, at pp. 189–190.) Finally, subdivision (a)(2) provides for tolling while an attorney "continues to represent the plaintiff." In this provision, the word "plaintiff" is synonymous with and can only mean "client." (See *Roger Cleveland*, at p. 679.)

In the most recent amendments to section 340.6, the Legislature eschewed the word "plaintiff" and used the more specific term "client," providing that the statute is tolled during the pendency of a fee dispute "between the lawyer and *client*." (§ 340.6, subd. (a)(5), added by Stats. 2019, ch. 13, § 2, italics added.) The Court of Appeal below viewed this amendment not as a rejection of arguments about the significance of the word "plaintiff," but as an indication "that the Legislature knows how to limit a statutory provision to disputes between an attorney and his or her client." (*Escamilla*, *supra*, 97 Cal.App.5th at

p. 187.)  This argument might have more force if the Legislature had also amended subdivision (a)(2) to clarify that it was limited to an attorney's continued representation of a "client," but it did not do so.

Ultimately, the text of section 340.6 is ambiguous because it "does not by itself make clear" (*Lee, supra,* 61 Cal.4th p. 1233) whether the statute applies to malicious prosecution claims brought against attorneys by parties outside the attorney-client relationship.   The requirement that the alleged misconduct arise "in the performance of professional services" (§ 340.6, subd. (a)) suggests the statute is limited to claims challenging the attorney's performance of those services for a client.  But a broad reading of the phrase might suggest the statute could encompass claims against attorneys brought by anyone, so long as the alleged misconduct is connected to the attorney's professional activities.  Accordingly, we look to section 340.6's legislative history and purpose.  (See *Lee,* at pp. 1233–1236.)

### 2.  *Legislative History and Purpose*

"The Legislature enacted section 340.6(a) in 1977 amid rising legal malpractice insurance premiums." (*Lee, supra,* 61 Cal.4th at p. 1233.)  Within a single year, insurance premiums for California attorneys had increased nearly 400 percent. (Mallen, *Panacea or Pandora's Box? A Statute of Limitations for Lawyers* (1977) 52 Cal. State Bar J. 22, 22 (hereafter Mallen).) Two aspects of the law contributed to this crisis.  First, legal malpractice actions had previously been subject to "a strict two-year limitations period running from the time of the negligent act." (*Beal Bank, SSB v. Arter & Hadden, LLP* (2007) 42 Cal.4th 503, 509 (*Beal Bank*).)  However, this clear limitation was muddied by the creation of a delayed discovery rule.  In 1971,

two decisions of this court held that a legal malpractice cause of action does not accrue until the plaintiff discovers, or should discover, the facts on which the claim is based. (*Budd, supra*, 6 Cal.3d at pp. 200–201; *Neel, supra*, 6 Cal.3d at p. 190.) "These decisions made it difficult for attorneys and insurers to determine when the limitations period for potential malpractice lawsuits began to run." (*Lee*, at p. 1233.) Second, different limitations periods applied to claims against lawyers depending on whether the plaintiff's complaint asserted breach of a written contract (§ 337 [four years]), fraud (§ 338 [three years]), or breach of an oral contract or a tort affecting intangible property (§ 339, subd. (1) [two years]). (See *Lee*, at p. 1234; Mallen, at pp. 22–23.) Attorneys and their insurers could not be certain which limitations period would govern potential malpractice claims. (*Lee*, at p. 1234.)

It was in light of these circumstances that the Legislature enacted section 340.6. (Stats. 1977, ch. 863, § 1, p. 2609.) "To protect clients, the Legislature codified the *Neel/Budd* delayed discovery rule (Sen. Com. on Judiciary, Analysis of Assem. Bill No. 298 (1977–1978 Reg. Sess.) as amended May 17, 1977, p. 2; see *Laird v. Blacker*[ (1992)] 2 Cal.4th [606,] 611), albeit with a one-year limit from the time of actual or imputed discovery. To protect attorneys, it adopted a firm four-year outside limit on liability . . . ." (*Beal Bank, supra*, 42 Cal.4th at p. 511.) Committee reports indicate this four-year limit was intended to counteract the otherwise "open-ended" liability to which lawyers were subject under the delayed discovery rule. (Assem. Com. on Judiciary, Dig. of Assem. Bill No. 298 (1977–1978 Reg. Sess.) as amended May 9, 1977, p. 3; see Assem. Off. of Research, 3d reading analysis of Assem. Bill No. 298 (1977–1978 Reg. Sess.) as amended May 17, 1977, p. 2.) By creating a specific statute

for claims against lawyers, the Legislature also ensured the limitations period would no longer vary depending on whether the plaintiff's claims sounded in contract or in tort. These changes served the overarching purpose of the statute, which was "to reduce the costs of legal malpractice insurance." (Sen. Com. on Judiciary, Analysis of Assem. Bill No. 298 (1977–1978 Reg. Sess.) as amended May 17, 1977, p. 1.) Finally, legislative staff noted that enacting a specific statute of limitations for legal malpractice, including the specific tolling provisions of section 340.6, would align with a similar statute enacted two years earlier for medical malpractice. (Sen. Com. on Judiciary, Analysis of Assem. Bill No. 298, *supra*, p. 4; Governor's Off., Enrolled Bill Rep. on Assem. Bill No. 298 (1977–1978 Reg. Sess.) Sept. 15, 1977; see § 340.5.)

Nearly all legislative history materials describe section 340.6 as a statute of limitations for "legal malpractice." (E.g., Sen. Com. on Judiciary, Analysis of Assem. Bill No. 298, *supra*, p. 1; Assem. Com. on Judiciary, Dig. of Assem. Bill No. 298, *supra*, p. 1.) However, as we explained in *Lee*, the language of the proposed statute evolved to encompass a somewhat wider variety of claims. (See *Lee*, *supra*, 61 Cal.4th at p. 1235.) When the bill that enacted section 340.6 was originally introduced, it proposed a statute of limitations for actions "against an attorney based upon the attorney's alleged *professional negligence*." (Assem. Bill No. 298 (1977–1978 Reg. Sess.) as introduced Jan. 25, 1977, § 1, italics added.) A few months later, Assembly amendments replaced the phrase "professional negligence" with broader language, providing that the new statute of limitations would apply to actions "against an attorney for a *wrongful act or omission*, other than for actual fraud, *arising in the performance of professional services*."

(Assem. Bill No. 298 (1977–1978 Reg. Sess.) as amended May 9, 1977, § 1, some italics omitted.) Legislative history does not explain this change, but the amended language appears to derive from a State Bar Journal article that was circulated to legislators. (*Lee*, *supra*, 61 Cal.4th at pp. 1234–1235; see Assem. Com. on Judiciary, Dig. of Assem. Bill No. 298, *supra*, p. 3, citing Mallen, *supra*, 52 State Bar J. 22.) In drafting section 340.6, the Legislature drew heavily from the model statute proposed in the article. (*Lee*, at p. 1235; *Beal Bank*, *supra*, 42 Cal.4th at p. 510.) The article had observed that the word " 'malpractice' " is imprecise, and it counseled that legal malpractice is "best stated in terms of the actual wrong: a wrongful act or omission occurring in the rendition of professional services." (Mallen, at p. 77.)

Even after the bill's amendment, legislative reports continued to describe section 340.6 as "a statute of limitations for legal malpractice claims." (*Lee*, *supra*, 61 Cal.4th at p. 1235; see, e.g., Sen. Com. on Judiciary, Analysis of Assem. Bill No. 298, *supra*, p. 1; Assem. Off. of Research, concurrence in Sen. amends. of Assem. Bill No. 298 (1977–1978 Reg. Sess.), as amended Aug. 17, 1977, p. 1; Governor's Off., Enrolled Bill Rep. on Assem. Bill No. 298, *supra*, Sept. 15, 1977.) Legislators also used this shorthand when they amended the law in 2009. Committee reports in connection with those amendments consistently described section 340.6 as "the statute of limitations for malpractice actions against an attorney." (E.g., Assem. Com. on Public Safety, Rep. on Assem. Bill No. 316 (2009–2010 Reg. Sess.) as introduced Feb. 18, 2009, p. 1; Sen. Com. on Public Safety, Analysis of Assem. Bill No. 316 (2009–2010 Reg. Sess.) as amended Jun. 16, 2009, p. 4.) When the statute was most recently amended in 2019, however, the

Legislature used broader terminology. Committee reports regarding these amendments, which provide for tolling while a dispute over the lawyer's fees is pending (see § 340.6, subd. (a)(5)), refer to section 340.6 as the statute of limitations for "claims of attorney misconduct or malpractice" (Sen. Rules Com., Analysis of Assem. Bill No. 692 (Reg. Sess. 2019–2020) as introduced Feb. 19, 2019, pp. 6, 7) or "specified misconduct in the performance of professional services" (*id*., at p. 3; Sen. Judiciary Com., Analysis of Assem. Bill No. 692 (2019–2020 Reg. Sess.) as introduced Feb. 19, 2019, p. 3). The 2019 amendments postdated *Lee*'s interpretation of section 340.6, though the committee reports do not mention that case.

*Lee* found it significant that the Legislature had amended the original bill to give section 340.6 "a broader sweep than its original language would have provided." (*Lee*, *supra*, 61 Cal.4th at p. 1236.) These amendments signaled a legislative intent that the statute cover misconduct beyond legal malpractice. (*Ibid*.; see *Yee*, *supra*, 220 Cal.App.4th at p. 196; *Vafi*, *supra*, 193 Cal.App.4th at p. 882.) Nevertheless, *Lee* stressed that the Legislature's "primary purpose" in enacting section 340.6 "was to address the growing cost of malpractice lawsuits." (*Lee*, at p. 1236.) We considered this legislative purpose as a limiting factor and reasoned that the statute applies only to claims premised on an attorney's violation of a "*professional* obligation" during the attorney-client relationship, not the full panoply of misconduct that any person, attorney or otherwise, might commit. (*Ibid*.; see *id*. at p. 1233.)

In contrast to the clear indication of legislative intent we noted in *Lee*, there is no indication the Legislature ever intended that section 340.6 apply to malicious prosecution, or, indeed, any action brought by someone outside the attorney-client

15

relationship. (See *Roger Cleveland*, *supra*, 225 Cal.App.4th at p. 682.) The amendments discussed in *Lee* broadened the statute's reach, but only insofar as they defined more precisely the "actual wrong" of legal malpractice, that is, an attorney's wrongful acts or omissions in rendering professional services for a client. (Mallen, *supra*, 52 State Bar J. at p. 77; see *Beal Bank*, *supra*, 42 Cal.4th at p. 510.) They did not signal an intent to give attorneys the benefit of a shortened limitations period for all wrongs they might commit against *anyone*, even if those wrongs occurred while the attorney was performing legal services for a client. On the contrary, as we observed in *Lee*, it appears "the Legislature intended section 340.6(a) to apply to most lawsuits *between clients and their attorneys*." (*Lee*, *supra*, 61 Cal.4th at p. 1238, italics added.)

Our interpretation must also consider the Legislature's purpose in enacting section 340.6. One such purpose was "to eliminate the former limitations scheme's dependence on the way a plaintiff styled his or her complaint." (*Lee*, *supra*, 61 Cal.4th at p. 1236.) Previously, as noted, the statute of limitations for legal malpractice was two years if the action was pled as a tort (§ 339, subd. (1)), four years if pled as breach of a written contract (§ 337), or three years if pled as fraud (§ 338). By enacting a single statute framed in terms of the wrongful conduct alleged and ultimately proven, the Legislature enhanced the predictability of legal malpractice claims and discouraged attempts to evade the statute of limitations through artful pleading. (See *Lee*, at p. 1236.) Such concerns about artful pleading are diminished in the malicious prosecution context. In contrast to a client alleging legal malpractice, a litigation adversary will have little if any basis for repackaging

a malicious prosecution complaint into something else, such as a breach of contract action.

Another purpose animating section 340.6, which features prominently in its legislative history, was the Legislature's desire to counteract the rising costs of legal malpractice lawsuits and related insurance premiums. (See Sen. Com. on Judiciary, Analysis of Assem. Bill No. 298, *supra*, p. 1; *Lee, supra*, 61 Cal.4th at p. 1236.) The parties advance competing arguments about whether applying section 340.6 to malicious prosecution claims would be consistent with this goal. As Escamilla points out, the Insurance Code has long prohibited indemnification for malicious prosecution. (See Ins. Code, § 533; *Downey Venture v. LMI Ins. Co.* (1998) 66 Cal.App.4th 478, 506.) Because insurers are forbidden by law from indemnifying attorneys for this intentional wrong, he contends shortening the statute of limitations for malicious prosecution is unlikely to have a significant effect on the cost or availability of legal malpractice insurance. Vannucci counters that insurers may still have a duty to defend such claims, depending on the terms of their policies. (See *Downey Venture*, at pp. 506–510.) He argues this possibility may contribute to higher premiums for attorneys. (See *Connelly, supra*, 33 Cal.App.5th at p. 795; *Yee, supra*, 220 Cal.App.4th at pp. 196–197.) The duty to defend arises, however, *only* if the policy promises coverage for malicious prosecution. Absent an express provision to this effect, "an insurer has no duty to defend a malicious prosecution action." (Mallen & Grossbaum, Legal Malpractice Insurance Guide: Law Office Guide to Purchasing Legal Malpractice Insurance (2024 ed.) § 2:46; see *State Farm Fire & Casualty Co. v. Drasin* (1984) 152 Cal.App.3d 864, 868–869.) On balance, it appears

that excluding malicious prosecution claims from section 340.6 would not undermine the statute's purpose.

We also find it enlightening here to consider statutory purpose within the context of section 340.6's enactment. When the Legislature enacted section 340.6 in 1977, malicious prosecution claims were *already* subject to a one-year statute of limitations. From 1905 to 2002, former section 340, subdivision (3) prescribed a one-year limitations period for injury or death "caused by the wrongful act or neglect of another." (Stats. 1905, ch. 258, § 2, p. 232; see *Stavropoulos*, *supra*, 141 Cal.App.4th at p. 194.) It was well established by 1977 that this one-year statute applied to malicious prosecution claims. (See, e.g., *Storey v. Shasta Forests Co.* (1959) 169 Cal.App.2d 768, 769–770.)[8] Thus, even assuming malicious prosecution claims might contribute to increased premiums for legal malpractice insurance, the 1977 Legislature would have understood that bringing such claims within section 340.6 would have had no effect on these costs. The statute of limitations would have remained the same either way. (Cf. *Flores v. Presbyterian Intercommunity Hospital* (2016) 63 Cal.4th 75, 87 & fn. 4 [concluding legislative concerns about high medical malpractice premiums would have counseled against an interpretation that made certain claims subject to the same or longer limitations period].)

Accordingly, legislative history and the purposes animating section 340.6 lead us to conclude that the statute

---

[8]     Although courts have since concluded malicious prosecution claims are governed by the two-year limitations period in section 335.1 (see, e.g., *Stavropoulos*, *supra*, 141 Cal.App.4th at p. 197), that statute was not enacted until 2002.

does not apply to malicious prosecution claims brought against attorneys by third parties. This interpretation is consistent with our holding in *Lee*. As noted, *Lee* did not address whether section 340.6 applied to claims brought by nonclients. That case considered only whether section 340.6 was limited to legal malpractice claims "or cover[ed] a broader range of wrongful acts or omissions that might arise *during the attorney-client relationship*." (*Lee*, *supra*, 61 Cal.4th at p. 1233, italics added.) In holding that the statute "applies to claims whose merits necessarily depend on proof that an attorney violated a professional obligation in the course of providing professional services" (*Lee*, at pp. 1236–1237), *Lee* explained that "a 'professional obligation' is an obligation that an attorney has by virtue of being an attorney" (*id.* at p. 1237). These include fiduciary obligations as well as the duties of competent performance, provision of services contemplated by the retention agreement, and adherence to the State Bar Rules of Professional Conduct. (*Ibid.*) "By contrast, . . . section 340.6(a) does not bar a claim for wrongdoing — for example, garden-variety theft — that does not require proof that the attorney has violated a professional obligation, even if the theft occurs while the attorney and the victim are discussing the victim's legal affairs." (*Ibid.*) Notably, *all* of *Lee*'s examples of potentially covered claims involve obligations attorneys owe to their present or former *clients* or their intended beneficiaries. *Lee* did not suggest that section 340.6 might extend to claims brought by nonclients for wrongs allegedly done to them.[9] We now conclude

_____

[9]    As support for the proposition that section 340.6 was not limited to legal malpractice claims, *Vafi* cited cases that had applied the statute to claims of unconscionable fees (*Levin v. Graham & James* (1995) 37 Cal.App.4th 798), breach of

it does not. As we interpret the statute, the one-year limitations period of section 340.6 applies only to claims by an attorney's clients, or their intended beneficiaries, and only when the merits of the claim necessarily depend on proof the attorney violated a professional obligation. (See *Lee*, at pp. 1229, 1238.)

3. *Policy*

Policy considerations also support the conclusion that section 340.6's one-year statute of limitations does not apply to malicious prosecution actions brought against attorneys by those outside the attorney-client relationship.

Our construction of section 340.6 avoids the potential unfairness that would arise from applying different statutes of limitations to claims for the same alleged misconduct depending upon whether the suit is brought against an attorney or client. In this case, for example, there is no question that Escamilla's malicious prosecution claim against non-attorneys Yang and Wu is timely under the two-year limitations period of section 335.1. Yet, in the Court of Appeal's interpretation, the same claim against attorney Vannucci was subject to dismissal under the one-year limitations period of section 340.6. Such differential treatment puts the greater burden on clients, even though attorneys are generally better positioned to assess

_____

fiduciary duty (*Stoll v. Superior Court* (1992) 9 Cal.App.4th 1362), and breach of contract (*Southland Mechanical Contractors Corp. v. Nixen* (1981) 119 Cal.App.3d 417). (*Vafi, supra*, 193 Cal.App.4th at p. 883.) What the *Vafi* court failed to appreciate in extending section 340.6 to malicious prosecution, however, was that each of the cases it cited involved claims brought by an attorney's *clients* for breach of a professional duty owed to them. (See *Levin*, at p. 800; *Stoll*, at p. 1363; *Southland Mechanical Contractors*, at p. 423.)

whether an action is supported by probable cause. (See *Roger Cleveland, supra*, 225 Cal.App.4th at p. 683.) *Roger Cleveland* observed that "imposing separate statutes of limitation on a client and his or her attorney leads to an absurd result in which the client can be sued for following the attorney's advice, long after the client's attorney ceases to be potentially liable for recommending the course of action." (*Ibid.*) Like that court, we discern "no policy reason in the legislative history or elsewhere for providing a more circumscribed limitations period for attorney defendants than for client defendants of malicious prosecution actions." (*Ibid.*)[10] Applying a single limitations period to both classes of defendants also avoids the interpretive difficulties that would arise in malicious prosecution cases against attorneys who represent themselves in the underlying action. (See *Connelly, supra*, 33 Cal.App.5th at p. 793, fn. 4 ["Of course, attorneys can also be litigants"].)

The incongruity of applying a shorter limitations period to claims against attorneys cannot be justified by labeling malicious prosecution a " 'disfavored cause of action.' " (*Vafi, supra*, 193 Cal.App.4th at p. 883; see *Yee, supra*, 220 Cal.App.4th at p. 196.) True, "the tort is disfavored both because of its 'potential to impose an undue "chilling effect" on the ordinary citizen's willingness to report criminal conduct or

---

[10] Our limited disapproval of the *Roger Cleveland* opinion in *Lee* should not be overread. *Lee* disapproved *Roger Cleveland* only for its unduly narrow interpretation of section 340.6 "as a professional negligence statute." (*Roger Cleveland, supra*, 225 Cal.App.4th at p. 677; see *Lee, supra*, 61 Cal.4th at p. 1239.) *Lee* did not disturb *Roger Cleveland*'s holding that section 340.6 does not apply to malicious prosecution claims against attorneys. (See *Parrish, supra*, 3 Cal.5th at p. 775.) That holding was correct.

to bring a civil dispute to court' [citation] and because, as a means of deterring excessive and frivolous lawsuits, it has the disadvantage of constituting a new round of litigation itself [citation]." (*Wilson v. Parker, Covert & Chidester* (2002) 28 Cal.4th 811, 817; see *Sheldon Appel Co. v. Albert & Oliker* (1989) 47 Cal.3d 863, 872–873.) But while that disfavor might counsel against judicial expansion of the tort (see *Crowley v. Katleman* (1994) 8 Cal.4th 666, 680), it does not support the application of a shorter limitations period for one group of defendants. On the contrary, "we have cautioned that this 'convenient phrase,' [a *disfavored* cause of action,] 'should not be employed to defeat a legitimate cause of action' or to 'invent[] new limitations on the substantive right, which are without support in principle or authority.' " (*Zamos, supra*, 32 Cal.4th at p. 966.)

Finally, our conclusion that section 340.6 does not apply to malicious prosecution claims avoids the potential unfairness that might arise from different accrual and tolling rules that pertain when an appeal is taken from the underlying judgment. This potential problem was discussed in the *Roger Cleveland* opinion.

There, the malicious prosecution action brought more than a year after judgment was entered in the underlying lawsuit, but that judgment had been appealed. (*Roger Cleveland, supra*, 225 Cal.App.4th at pp. 671–672.) Longstanding case law holds that a malicious prosecution action accrues when judgment is entered in the underlying suit but the statute of limitations is *tolled* while an appeal from that judgment is pending. (See *Stavropoulos, supra*, 141 Cal.App.4th at p. 197; *White v. Lieberman* (2002) 103 Cal.App.4th 210, 216; *Bellows v. Aliquot Associates, Inc.* (1994) 25 Cal.App.4th 426, 430, 433–434; *Rare Coin Galleries, Inc. v. A–Mark Coin Co., Inc.*

(1988) 202 Cal.App.3d 330, 334–335.) Courts developed this rule because, once an appeal has been taken from the underlying judgment, a malicious prosecution plaintiff can no longer accurately allege that the prior action reached a favorable termination. (See *Ray v. First Federal Bank* (1998) 61 Cal.App.4th 315, 320; *Gibbs v. Haight, Dickson, Brown & Bonesteel* (1986) 183 Cal.App.3d 716, 721–722 (*Gibbs*).) "The filing of an appeal renders the malicious prosecution action premature." (*Roger Cleveland*, at p. 674.) The statute of limitations is therefore tolled during this period "and recommences to run when the appellate process has been exhausted." (*Ibid*.) The rule is different for legal malpractice claims. In *Laird v. Blacker, supra*, 2 Cal.4th at page 618 (*Laird*), we concluded the tolling provisions set forth in section 340.6 are exclusive. Because section 340.6 does not expressly authorize tolling while a client's adverse judgment is on appeal, we held that legal malpractice claims are not tolled during an appeal. (*Laird*, at pp. 620–621.)

The attorney-defendants in *Roger Cleveland* argued the malicious prosecution case against them was subject to section 340.6 and, pursuant to *Laird*, that statute's one-year limitation period was not tolled while the underlying judgment was on appeal. (*Roger Cleveland, supra,* 225 Cal.App.4th at pp. 674–675.) In other words, they asserted both (1) that a different statute of limitations applies to malicious prosecution claims against attorneys, as compared to their clients, and (2) that the judge-made rule providing for tolling during the pendency of an appeal does not apply when the malicious prosecution defendant is an attorney. (*Id*. at p. 676.) The court disagreed with both contentions. It reasoned that the Legislature would have provided for altered accrual or tolling

during an appeal if it had intended for section 340.6 to encompass malicious prosecution. (*Roger Cleveland*, at p. 677.) Further, applying the one-year statute without such an accrual rule could lead to unreasonable results because it would "permit[] the losing party in the prior action to file a notice of appeal to run out the statute of limitations, or requir[e] a malicious prosecution plaintiff to bring a premature action during the pendency of the appeal." (*Ibid*.)

*Roger Cleveland*'s discussion on this point is instructive. The statute of limitations on a malicious prosecution action must be suspended while an appeal from the underlying judgment is pending because, until the appeal is decided, the plaintiff cannot establish that the prior action reached a favorable termination. (See *Gibbs*, *supra*, 183 Cal.App.3d at pp. 721–722.) Yet it is unclear whether this tolling rule would apply if malicious prosecution claims against attorneys are governed by section 340.6. The statute does not provide for tolling during the pendency of an appeal, and, though we have not addressed the issue in the malicious prosecution context, we have expressly held that an appeal does *not* toll the statute for malpractice claims. (*Laird*, *supra*, 2 Cal.4th at p. 615; cf. *Jordache Enterprises, Inc. v. Brobeck, Phleger & Harrison* (1998) 18 Cal.4th 739, 754–755 [rejecting delayed accrual rule for section 340.6 based on outcome of related litigation].)[11] Applying section 340.6 to malicious prosecution claims against attorneys without permitting tolling during an appeal could lead

_____

[11] At oral argument, Vannucci's counsel suggested a malicious prosecution claim might be tolled during appeal on the theory that, until the appeal is decided, a malicious prosecution plaintiff "has not sustained actual injury." (§ 340.6, subd. (a)(1).) He cited no authority for this position, however.

to premature actions or abuses of the appeals process for the purpose of running out the statute of limitations. (See *Roger Cleveland, supra*, 225 Cal.App.4th at p. 677.) Neither outcome would be desirable. Our conclusion that malicious prosecution claims are not subject to section 340.6 avoids this potential difficulty.

C.  *Application*

Because the one-year statute of limitations in section 340.6 does not apply here, Escamilla's complaint against Vannucci falls under section 335.1, the statute generally applicable to malicious prosecution claims. (See *Stavropoulos, supra*, 141 Cal.App.4th at p. 197.) The complaint was filed less than two years after judgment was entered in Escamilla's favor in the underlying case, making it timely. The trial court erred in granting Vannucci's motion to strike on untimeliness grounds.[12]

---

[12]  In addition to a statute of limitations defense, Vannucci argued he had a probability of prevailing because he had probable cause to pursue the underlying litigation and did not act with malice toward Escamilla.

## III.  DISPOSITION

The judgment is reversed.  The matter is remanded to the Court of Appeal for it to return the case to the trial court with directions to consider any unaddressed arguments in the anti-SLAPP motion.  The contrary holdings in *Garcia v. Rosenberg, supra*, 42 Cal.App.5th 1050, *Connelly v. Bornstein, supra*, 33 Cal.App.5th 783, *Yee v. Cheung, supra*, 220 Cal.App.4th 184, and *Vafi v. McCloskey, supra*, 193 Cal.App.4th 874 are disapproved.

**CORRIGAN, J.**

**We Concur:**

**GUERRERO, C. J.**
**LIU, J.**
**KRUGER, J.**
**GROBAN, J.**
**JENKINS, J.**
**EVANS, J.**

*See next page for addresses and telephone numbers for counsel who argued in Supreme Court.*

**Name of Opinion**  Escamilla v. Vannucci

_____

<u>**Procedural Posture**</u> (see XX below)
**Original Appeal**
**Original Proceeding**
**Review Granted (published)** XX 97 Cal.App.5th 175
**Review Granted (unpublished)**
**Rehearing Granted**

_____

**Opinion No.** S282866
**Date Filed:** March 20, 2025

_____

**Court:**  Superior
**County:**  Alameda
**Judge:**  Tara M. Desautels

_____

**Counsel:**

Daniel Escamilla, in pro. per., for Plaintiff and Appellant.

Gordon Rees Scully Mansukhani and James K. Holder for Defendant and Respondent.

Buchalter, Harry W.R. Chamberlain II and Robert M. Dato for the Association of Southern California Defense Counsel as Amicus Curiae on behalf of Defendant and Respondent.

**Counsel who argued in Supreme Court (not intended for publication with opinion):**

Daniel Escamilla
1679 East Orangethorpe Avenue #117
Atwood, CA 92811
(714) 210-3500

James K. Holder
Gordon Rees Scully Mansukhani, LLP
315 Pacific Avenue
San Francisco, CA  94111
(415) 875-4192